UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARC P.                                          :
                                                 :
v.                                               :          C.A. No. 21-00112-MSM
                                                 :
KILOLO KIJAKAZI, Commissioner                    :
Social Security Administration                   :

REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Supplemental Security Income benefits

("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on

March 8, 2021 seeking to reverse the Decision of the Commissioner.  On October 31, 2021, Plaintiff

filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security.

(ECF No. 12).  On November 30, 2021, Defendant filed a Motion to Affirm the Commissioner's

Decision.  (ECF No. 13).  On December 29, 2021, Plaintiff filed a Reply.  (ECF No. 15).  A hearing

was held on January 19, 2022.

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent research, I find that there is not substantial evidence in this record to

support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of

the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 12) be GRANTED

and that the Commissioner's Motion to Affirm (ECF No. 13) be DENIED.

I.       PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 30, 2018 (Tr. 311-317) alleging disability

since November 13, 2018.  The application was denied initially on March 26, 2019 (Tr. 178-183) and

on reconsideration on May 10, 2019.  (Tr. 185-190).  Plaintiff requested an Administrative Hearing.

On February 3, 2020, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ")

at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.

(Tr. 160-176).  The ALJ issued an unfavorable decision to Plaintiff on February 13, 2020.  (Tr. 191-

203).  The Appeals Council granted Plaintiff's request for review of the ALJ's decision on December

2, 2020 and, on January 9, 2021, after review and consideration of additional medical evidence, the

Appeals Council adopted the ALJ's findings and concluded that Plaintiff was not disabled within the

meaning of the Social Security Act through February 13, 2020.  (Tr. 1-7).  A timely appeal of the

January 9, 2021 Appeals Council decision was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's denial of benefits was erroneous in several respects

including the failure to include undisputed limitations in the RFC finding, the failure to find his back

impairment to be "severe" at Step 2, and the failure to give adequate consideration to new and material

evidence arising after the period under consideration, i.e., after February 13, 2020.

The Commissioner disputes Plaintiff's claims and contends that the decision denying benefits

must be affirmed because it is based on substantial evidence and free of harmful legal error.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of HHS, 955

F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir.

1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the

case on a complete record, including any new material evidence.   Diorio v. Heckler, 721 F.2d 726,

729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals

Council).  After a sentence four remand, the court enters a final and appealable judgment immediately,

and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good cause
> for the failure to incorporate such evidence into the record in a prior
> proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new,

non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a

reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-

1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner,

if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the

parties must return to the court after remand to file modified findings of fact.  Id.  The court retains

jurisdiction pending remand and does not enter a final judgment until after the completion of remand

proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months.  42

U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the

national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.      Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence.  The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers).  20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors.  Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements).  Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied).  Of the five factors, the "most important" are supportability and consistency.  Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors.  Id. §§ 404.1520c(b)(3), 416.920c(b)(3).  In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis."  Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel.  Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d).  And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists.  Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments.  Id.  Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any

previous level of adjudication, and statements by medical sources as to any issue reserved to the

Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

>B.      **Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990,

997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to

retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that

right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142

(1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived

the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where

an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop

a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of

Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

>C.      **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to enable

the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir.

1985).

>D.      **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520,

416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R.

§ 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments

which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national

economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the

ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen

v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through

exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional

impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S.

458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional

impairments, impairments which place limits on an individual's ability to meet job strength

requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work

at a given residual functional level or when a claimant has a non-exertional impairment that

significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d

at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant can

perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248

(5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional

limitations are severe enough to preclude a wide range of employment at the given work capacity level

indicated by the exertional limitations.

### 1.      Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C.

§ 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.     SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. §

404.1529(c)(3).   In determining whether the medical signs and laboratory findings show medical

impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the

First Circuit's six-part pain analysis and consider the following factors:

> (1)      The nature, location, onset, duration, frequency, radiation, and
> intensity of any pain;
>
> (2)      Precipitating and aggravating factors (e.g., movement, activity,
> environmental conditions);
>
> (3)      Type, dosage, effectiveness, and adverse side-effects of any
> pain medication;
>
> (4)      Treatment, other than medication, for relief of pain;
>
> (5)      Functional restrictions; and
>
> (6)      The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not,

by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  However, the individual's statements

about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely

because the objective medical evidence does not substantiate the degree of impairment-related

symptoms."  SSR 16-3p, 2017 WL 4790249, at *49465.

### 2.      Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility

finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure

to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017).  It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings.  SSR 16-3p, 2017 WL 4790249, at *49465.

## V.       APPLICATION AND ANALYSIS

### A.       The Commissioner's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff's impulse control disorder, anxiety, OCD, depression, and ADHD were "severe" impairments within the meaning of the applicable regulations.  The ALJ also explained why she found Plaintiff's lumbar spine disorder/low back pain to be a non-severe impairment.  (Tr. 197).  As to RFC, the ALJ found that Plaintiff could perform work at all exertional levels but restricted to simple, familiar, object-oriented tasks requiring only occasional interaction with others.  Based on this RFC and testimony

from the VE, the ALJ concluded that Plaintiff was not disabled because he could still perform a broad range of unskilled sedentary, light, and medium jobs available in the economy.

The Appeals Council granted review of the ALJ's decision at Plaintiff's request and issued its own findings.  See 20 C.F.R. § 416.1479 ("The Appeals Council may affirm, modify or reverse the [ALJ] hearing decision or it may adopt, modify or reject a recommended decision.").  The Appeals Council generally agreed with the ALJ's findings but granted review to consider the opinion of Gayle Mello, LICSW, Plaintiff's treating therapist.  The opinion had been rejected by the ALJ as an untimely submission.  The Appeals Council accepted Ms. Mello's opinion into the record but found it unconvincing because it was "a series of checked boxes without any objective support for the marked limitations," and Plaintiff's mental status examinations were "routinely unremarkable and treatment for mental impairments has been routine and conservative in nature."  (Tr. 307).  The Appeals Council gave Plaintiff, and his attorney at the time, notice of its proposed conclusions and thirty days to file any additional evidence or argument to challenge the proposed decision.  (Tr. 307-308).  Nothing additional was filed, and the Appeals Council generally adopted the ALJ's conclusions and finalized its non-disability decision on January 9, 2021.  (Tr. 4-7).

**B.      The Step 2 Finding that Plaintiff's Back Impairment was not Severe is not Supported by Substantial Evidence**

On January 9, 2021, the Appeals Council adopted the ALJ's February 13, 2020 findings, including the finding at Step 2 that "the record does not show that [Plaintiff's] lumbar spine disorder caused more than minimal functional limitation in [his] ability to do basic work activities, and is nonsevere."  (Tr. 197, 4-7).  Plaintiff argues that the Appeal Council's Step 2 finding is plainly erroneous and unsupported by the record before it.  The relevant question is whether the Appeals Council's decision in that regard is supported by substantial evidence.  Since I find that it is not so supported, I recommend that the claim be remanded for further review.

I will start with the ALJ's original reasoning.  She recognized that Plaintiff had reported a several-year history of low back pain but noted that it had been managed with conservative treatment. (Tr. 197, 201).  She found the opinions of the state agency reviewing physicians (Dr. Laurelli and Dr. Pressman) that Plaintiff had no severe physical impairments to be persuasive, consistent with the medical record and with Plaintiff's non-antalgic gait and ability for sustained walking.  (Tr. 201).

On January 15, 2019, Dr. Laurelli found that Plaintiff had no severe physical impairments. (Exh. 2A).  As to Plaintiff's low back pain, he noted one episode in November 2017 with normal spine exam and no further symptoms or treatment.  (Tr. 179).  A few months later, on May 9, 2019, Dr. Pressman adopted that finding and noted that Plaintiff had still not started physical therapy for his low back pain and has had a normal spine exam in past.  (Tr. 186).  If the issue was whether the ALJ's February 13, 2020 Step 2 Decision was supported by substantial evidence, these medical opinions may well have been sufficient to meet that standard.  However, that is not the issue since the Appeals Council granted review and issued its own Decision on January 9, 2021 after reviewing additional medical evidence of record.

When the Appeals Council ruled in this case, over twenty months had passed since Dr. Pressman rendered the opinion relied upon by the ALJ for the Step 2 finding it adopted. The record before the ALJ also contained significant medical evidence not reviewed by Dr. Pressman including treatment notes from Dr. Brennan (Tr. 488-494, 649), physical therapy treatment notes (Tr. 474-487), an MRI report (Tr. 491), and treatment notes from a pain management specialist (Tr. 497-501, 650-655).  In addition, the record was expanded before the Appeals Council to include records from Kent Hospital related to Plaintiff's back impairment and a back surgery performed on September 22, 2020. (Tr. 18).  However, the Appeals Council ultimately determined that this additional evidence did not relate to the period at issue and thus did not affect the decision about whether Plaintiff was disabled beginning on or before February 13, 2020.  (Tr. 4).  I disagree.

The applicable regulations permit the Appeals Council to consider additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision…." 20 CFR § 416.1470(a)(5). The HALLEX operational manual § I-3-3-6 (Additional Evidence) expounds that additional evidence can relate to the relevant period even when it "post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." Also, when rendering its decision, the Appeals Council applies the preponderance standard to its review of the record and any additional evidence received. 20 CFR § 416.1479. Here, the additional medical records reasonably relate to the relevant period and, when considered in the context of the entire record, clearly establish, by a preponderance of the evidence, that Plaintiff had a severe back impairment on and before the date of the ALJ's Decision. Thus, I conclude that the Appeals Council's Step 2 Decision in this regard is not supported by substantial evidence, and remand is warranted.

The relevant period under consideration here is from the alleged disability onset date, November 13, 2018, through the date of the ALJ's Decision, February 13, 2020. Both the ALJ and the Appeals Council found at Step 2 that Plaintiff did not have any "severe" physical impairments during this relevant period and assessed an RFC for a full range of work at all exertional levels. An impairment is not "severe" when it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 CFR § 416.922. The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work…." Social Security Ruling ("SSR") 85-28. "The step two inquiry is a de minimis screening device [used] to dispose of groundless or frivolous claims." Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)); see also Lisi v. Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000).

Here, the Appeals Council was tasked with reviewing the medical record before it and determining if, by a preponderance of the evidence, Plaintiff had any severe physical impairment at

Step 2. The longitudinal weight of the evidence clearly shows that Plaintiff met his Step 2 burden regarding his back impairment. I conclude that the Appeals Council erred both when it found that the records relating to Plaintiff's back surgery did not reasonably relate to the relevant period and in adopting the ALJ's Step 2 finding. At the ALJ hearing on February 3, 2020, Plaintiff testified about his low back pain and that he had been regularly seeing Dr. Brennan. (Tr. 169). He testified that he had tried physical therapy without relief and then started going for injections. Id. Plaintiff testified that surgery was under consideration but that more injections were recommended. (Tr. 170). He was taking Ibuprofen 800s for the pain. Id.

On May 7, 2019, Plaintiff reported to his physical therapist that Dr. Brennan suspected a disc herniation. (Tr. 479). His treatment was modified but it was noted that flexion appeared to exacerbate his radicular pain. On May 14, 2019, Plaintiff indicated to the therapist that he was having "good days and bad days." (Tr. 477). He reported pain and soreness after activity. He showed some improved gait cadence but continued to show signs of lumbar spasm with tenderness to palpation.

On May 9, 2019, Dr. Pressman adopted Dr. Laurelli's earlier finding that Plaintiff has no severe physical impairments. (Tr. 186). It does not appear that those state agency physicians reviewed any of the records from Dr. Brennan or physical therapy. On May 21, 2019, Plaintiff reported to physical therapy that he was having a "bad day" with increased lower back and left leg pain. (Tr. 475). The therapist recorded that Plaintiff had an antalgic gate with a right trunk lean due to left side pain, poor transfer ability with increased time to move from sit to stand and bed mobility, and poor core control and exercise endurance. Id. The therapist indicated that the pain did not seem consistent with a significant disc herniation but suggested aquatic therapy due to increased pain. (Tr. 473). Finally, pain management intervention was recommended "to optimize [the] benefit of physical therapy at this time." Id.

Plaintiff was discharged from physical therapy on June 6, 2019 without much improvement noted. (Tr. 470). Plaintiff saw Dr. Brennan on that date with a report of ongoing back pain with some

extension mainly into his buttocks and thigh. (Tr. 489). He believed that physical therapy was "making him worse." Id. Dr. Brennan observed back tenderness with mild spasm and Plaintiff has a positive straight leg test bilaterally. Id. He was scheduled for an MRI by Dr. Brennan which was performed on June 20, 2019. (Tr. 491). It showed a small broad-based distal left foraminal disc herniation adjacent to the left L2 nerve root and some changes at L3-L4 and L4-L5, and a moderate disc bulge at L5-S1. Id.

On July 24, 2019, Plaintiff saw Dr. Brennan who reviewed the MRI and indicated that the L2-L3 herniation "could be consistent with the pain in the left leg and thigh." (Tr. 488). He scheduled Plaintiff for an epidural steroid injection at L2-L3. Id. The injection was performed on September 17, 2019. (Tr. 497). His pain at the time was recorded as an 8 out of 10. Id. He followed up with Dr. Brennan on October 3, 2019 and reported ongoing pain. (Tr. 649). He was diagnosed with an L2-L3 herniation with radiculopathy. Id. Plaintiff had another injection at L5-S1 on November 15, 2019 and ended up at the emergency room with worsening back pain the next day. (Tr. 656).

Plaintiff saw his primary care provider on September 16, 2020. (Tr. 11). The visit note indicates that Plaintiff had an updated MRI with Dr. Brennan and was scheduled for back surgery the next week. Id. Plaintiff reported that he was "hopeful for surgery as he has been suffering from chronic low back pain limiting his daily functions with minimal response to conservative treatment." Id. The back surgery took place on September 22, 2020. (Tr. 16). Dr. Brennan's operative note indicates a history of low back and left leg pain going on for many months and worsening with time. Id. He noted a history of failed conservative measures and the presence of MRI results consistent with Plaintiff's reported symptoms. Id.

The bulk of this medical history took place after the reviews done earlier in 2019 by Drs. Laurelli and Pressman which were found persuasive by the ALJ. By the time the Appeals Council issued its decision, it had the entirety of this longitudinal record before it, including the unsuccessful attempt at physical therapy, the epidural injections, the MRI findings and the back surgery records.

Although some of the records post-date the relevant period, the overwhelming weight of the evidence in total corroborates Plaintiff's hearing testimony and his reported symptoms and limitations. While reasonable minds might disagree as to whether the ALJ's Step 2 denial in early 2020 was supported by substantial evidence, the Appeals Council's early 2021 decision to adopt that finding and effectively rely in large part on the nearly two-year old opinions of the state agency reviewing physicians to conclude that Plaintiff had no "severe" back impairment during the relevant period and was capable of a "full range" of work at all exertional levels was plainly error on this record. The totality of this record is more than sufficient to show, by a preponderance, that Plaintiff had a "severe" back impairment as of February 13, 2020. A remand is warranted.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 12) be GRANTED and that the Commissioner's Motion to Affirm (ECF No. 13) be DENIED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 25, 2022